Arguments not to exceed 15 minutes per side. Mr. Tableman for the appellate. I'd like to reserve 4 minutes please. Very well. If it pleases the court, my name is L.P. Tableman. I'm an appellate on behalf of Mr. Kevin Asher. I want to start in reverse order in the way that I presented this case. In my briefing, I wanted to start with the role issue in this case. Which issue? The role issue, Your Honor. Okay. So I'm facing a clean air standard review. I want to speak up just a little bit, or you could raise that standard, or whatever. Thank you. To refresh the court's recollection, this is a civil rights criminal case coming from the Eastern District of Kentucky. A very rude, vicious, upsetting, shocking type of case. It was a jury trial. My client was convicted of two counts. One count found in a false report. And one count of deprivation of civil rights. As it came out at the trial, my client was a secondary actor in this mess. The lead person was a supervisory jailer named Damon Hickman. And this whole matter became uncovered when Mr. Hickman, in a manner unrelated to my client, with another jailer assaulted him, resulting in the death of Mr. Larry Trent. There was an in-suit investigation, and Mr. Hickman fingered various people. One of whom was my client. At my client's sentencing, Jeff Caldwell said twice, Mr. Hickman was certainly the more culpable person. Well, it's not who's more culpable. It's not a relative thing. It's more just looking solely at your client. I mean, was he minor? Is that defined? And he did a lot of stuff. I mean, supposedly. He stomped a guy. He dressed up as a doctor and deceived him. He filed a false report. He refused, like the other guy, Hickman, to give him medical attention. That's not an insubstantial role in the offense. This is a tough argument. If you want to focus on this in the time you have, it's your choice. I'll spend a minute on it. If you look at the offense conduct, and the two participants in the offense conduct, and what happened in the offense conduct, my client is significantly less culpable. Sure, he committed a crime. He was convicted by a jury. That's true in every case where we're doing a role adjustment. He's not the one that went into the cell and first struck the inmate. The inmate couldn't even say who it was that was kicking him. But clearly, if you look at the two individuals, Mr. Hickman is 6'6", 390 pounds. He's a huge, huge guy with a known admitted propensity of beating inmates. So that's all I have to say about the role adjustment. I think the record speaks for itself. I think it does rise to the level of the plaintiff, or at least I ask the court to seriously consider that. Just because your man's 100-pound weakling is compared to the he-man Hickman, the fact that he can't punch as hard as Hickman doesn't mean he's less culpable. He's criminally responsible for his actions. If you look at what the two men did, who started it, who wanted him covered up, who's the leader, who's the organizer, it's not my client. So that's my argument. On 404B, to me, this is a morass to try and figure out what the cases really tell us. But if you look at the Turner incident, which was the 404B evidence, I respectfully disagree with the district judge who said that, well, this isn't going to bother the jury because they've already heard about the Hill incident. The Hill incident was the subject. The Hill incident was the subject, Your Honor. The Hill incident is the inmate is intoxicated and doesn't take a telephone call, and he floods his cell, and Hickman goes in and strikes him and knocks him down, and there's this kicking and putting him in a restrained chair, and it's sort of a blur after that. And that co-episode is somewhat disputed as far as what my client actually did. I mean, remember, on the defense witness side, there's a witness who said, I talked to Mr. Hill after the fact, he's in a restrained chair, and he said Mr. Hickman hit him. He didn't say Mr. Asher hit him. So anyway, that's the first one. The other one, the earlier in time one is the Turner incident. This is about, what, two and a half years earlier? Two and a half years earlier. And in that case, the man is already in a restrained chair, and he's swearing at Hickman. Asher's in the cell. Hickman unstraps him from the chair and socks him, knocks him out, knocks him down, and there's kicking that goes on. And then he's taken to a hospital. I'm sorry. Hickman calls another officer who lives to come make a report. There's the false report. They take Mr. Turner to the hospital, et cetera. So it's a – I view that in some ways as being a much worse episode than the Hill episode. Did Asher do a false report in that case too, the Turner case? Yes. So when we look at 404B, we're asking ourselves, what is the purpose for which this evidence is being offered? And we say it's not supposed to be offered to show propensity or character. So here, ostensibly, it's offered to show that when Asher is kicking and stomping and wearing the doctor's outfit and so on, that just in case the jury wouldn't figure this out, that he was doing so with an intent to deprive Hill of his constitutional rights. Is that the way to look at it? That's my understanding of it. But I don't feel it was that as well-analyzed as that, Your Honor. It's just this is a – we in the government have a duty to – it's a specific intent crime. We have a duty to prove specific intent, and this bears on specific intent. I mean, they're allowed to prove that element even if your guy, I think, wants to stipulate it? Well, in any event, I mean – Well, they're certainly allowed to ask to have it admitted, and then the district court has to go through this analysis, part of which even though it's part of their case, the court always asks all three more prejudicial exposure. And this is a horrific, horrific beating of another person two and a half years earlier, and there's no allegation that Hickman and Asher are embarked on some joint venture over all these years where this is some type of scheme or plan. It's not a race geste or something like that. No, and it's not like a drug case where you've got the same people making the same transaction in the same fashion or something, or a counterfeiting case where the guy passes one note here and you can show he passed another note elsewhere. This is that kind of a case. There's no real dispute about this intent issue in this case, and I try to – That's an element the government has to prove. Well, sure they have to prove it, but it's not – the defense was not, I didn't mean to do it. The defense was, I didn't do it. Why, did they take it all the way out? Yeah, I miss it. But what about the fact that the judge actually instructed the jury here to take this prior incident and then only for the purpose of establishing intent, not for offense? Doesn't that exact here a problem? I don't think so, because I think the evidence of the prior act is so reprehensible and horrific. Why is it even more reprehensible and horrific than the Hill incident, which is the case of trial? They basically did the same thing. The Turner – Turner is a smaller person. Turner is restrained already and let up. This earlier case with Turner is allegations. There's not a jury finding there. There's no doubt that it happened, and it's a horrific assault. I guess I'm going to the cumulative effect of it. I think it's a piling-up effect. It's a perpetuity effect. He did the same – ladies and gentlemen, he did the same thing two years before. It's that same thing. And that was what was argued in the closing argument. Look at this guy. You should find that he did it before and he did it again. Do you have a specific site that's about that closing argument? I mean, we can chase it down. I don't want to – Yeah, I don't give it. But it's your contention that they made a propensity argument in the closing argument? Or we'll chase it down. Yeah, I think the record will speak for itself. You're almost out of time. I think the record will speak for itself. But the nature of the evidence, in my mind, in argument in court, is sufficiently horrific. It's the bell that can't be unrung, and it's asking more than you can ask a reasonable jury to do in disregard of the propensity inference that comes from it. And it wasn't necessary. It was actually unnecessary in stipulation of something the court can consider in deciding prejudice versus coven. It was not an issue in the case. Why bring it in? It's brought in for propensity. Thank you. Thank you. May it please the court. Elizabeth Nash on behalf of the United States. With me at council table is Heidi Hawkins, who tried this case in a different court. This court should affirm the defendant's convictions and sentence. I'll turn first to the 404B issue that the court was just discussing. The defendant does not contest that the evidence was offered for a permissible purpose. In the briefing, there's some suggestion that perhaps the evidence was, you know, given that the defendant wanted to speak to intent. Intent's an issue government has to— Absolutely. And the main contention on appeal is the 403 balancing test. However, the district court did not abuse its broad discretion in balancing the probative value of the evidence against the risk of unfair prejudice. Here, the risk of unfair prejudice has to substantially outweigh the probative value. The district court considered the availability— We have a rule here, so I know that this court has discretion, but why do you think it does not sustain what would seem to be the patent propensity tendency of this evidence? Why does that not outweigh this probative value on something that de facto is barely contested in the case? There are two reasons. The first is that although there may have been a propensity inference that the jury could have drawn, the district court instructed the jury four separate times, four separate points in the trial, that the evidence could not be used that way. Is that the testing too much, perhaps? The defendant, on at least one occasion, asked the district court to give one of those limiting instructions, and the district court had failed to do so. The district court gave the defendant ample opportunity to modify those jury instructions if he believed they were not adequate to— Sometimes an instruction just can't overcome the overwhelming tendency of evidence to influence a jury in a way that it shouldn't. And I'm just going to be candid with you. That's my concern about this case. The similarity between the two— I suppose that goes to intent, but it makes the propensity here even more powerful. He did it before. These two guys did it before, and now they did it again. And it seems to me that the whole shooting match in this trial was did the conduct occur. If it occurred, the stomping and everything else, of course he did it for the reason to deprive the person uphill of his constitutional rights. The whole issue is did it occur, not did he have a bad intent when he stomped. And my very serious worry about this evidence, even though he had plenty to convict this guy, my serious worry about this evidence is that the jury had an overwhelming temptation to say, to find, whether they acknowledged it in their own minds or not, that because he did it that time, here we go, he's just doing it again. That's my concern. I don't mean to give a speech, but I want to be honest with you about where I'm coming from, just speaking for myself. And the district court did recognize that the fact that the two incidents were similar could lead the jury to that improper propensity inference. The district court recognized that, addressed it, and determined that although that evidence possibly could have that prejudicial impact, the fact that the two events were quite similar also speaks to probity. So the fact that the defendant had committed a prior similar act in the past that was very similar, and then tried to cover that act up, speaks to whether or not he knew that the conduct in this case was wrongful. And of course, the government is required to prove intent here, separate and apart from the underlying prohibited conduct. And so the government has an interest in being able to prove its case that it sees fit, and that's the rule that comes from old chiefs. So the district court recognized that the evidence had the tendency to be prejudicial. I don't mean to talk about it. 404B, yeah, you can prove your case as you see fit, but 404B and 403 puts some limits on it. One way to prove intent is just to prove the conduct happened here. I mean, if the Turner event never happened, the government has a very strong case to show intent, in this case, based on Hickman's testimony and Hill's testimony, right? The district court did address the availability of the government's other evidence, and one of the main factors that made the district court determine that the probative value of the other act evidence was relatively high here was the fact that the defendant, in an opening argument, that his theory of the case was entirely that Hickman and Gary Hill, the victim in the case, couldn't be believed. And that's partly because Damon Hickman had struck a deal with the government. He avoided the possibility of life in jail. But now this is not introducing the evidence to show Asher's intent at this point. It's introducing the evidence to bolster Hickman's credibility, and that's not a permissible purpose under 404B, I don't think. No, I would just respectfully disagree with that. The evidence was offered to prove the defendant's intent in this particular case. The fact that the defendant was challenging, vigorously challenging, the credibility of both Hickman and Hill speaks to the probity, the sort of need that the government had to introduce the other act evidence. So the sort of overwhelming evidence that you're speaking about that the government had wasn't as overwhelming as perhaps has been suggested, and that's because of the defendant's theory of the case, which challenged directly and vigorously Hickman's credibility, Hill's credibility. The propensity effect, I think, de facto, is what bolsters his credibility that it happened in this Hill incident. That would seem to be just a common-sense reaction. And again, the district court recognized the risk there and instructed the jury. Right, but instructions aren't always good enough. I had this case, Jenkins. It seems to have a lot of parallels to this case. The guy is charged with distributing cocaine in a particular house that his father owned. It's a constructive possession case. The drugs are laying all over the place. The question is whether he has dominion and control over the drugs. The government has to prove intent to distribute, true, but it's really a constriction. The real fight is whether he constructively possessed the drugs. Government seeks admission and gets admission of testimony that, by the way, six years before, he was busted for dealing marijuana out of the same house. Jury was instructed. Very proper instruction. But our court concluded that, you know what, even though he had a sufficiency challenge, which we just waved aside very quickly, even though the government had plenty of evidence to convict the guy fair and square, he did not get a fair trial. The trial was over as soon as that evidence came in. And the prejudicial effect was such that he didn't get a fair trial. And we vacated the conviction. I'm just wondering, what's the difference with this case? So again, in this case, I think one of the things is that the prior conduct wasn't so much more inflammatory or so much worse that it raises the question that Your Honor has suggested might be at issue here, which is that the jury would reach some kind of impermissible inference. It was about the same. It was about the same, just like it is here, more or less. And so given that, the jury is not likely to make that propensity inference because they're so overwhelmed by the sort of bad prior conduct or the inflammatory nature of the prior conduct, which this court has recognized as being one of the factors that goes to prejudicial effect. So here, we don't really have that. We have evidence that is similar, similar in kind, very close in time, much closer in time than the Jenkins case that you pointed out. This might be more along the lines of the Hardy case that was decided by this court. Well, the similarity just makes the propensity all the stronger. Imagine a case of a serial killer. And I'm not analogizing anybody here to a serial killer, but who kills his victims in some strange, idiosyncratic way every time. And now he's on trial for victim number six. And the government admits testimony that actually a month before, he actually was committed a murder in the identical fashion. Everything was identical. And so it was premeditated in this case. That's now before you. I mean, the similarity makes the temptation to say, well, he did that one. He must have done this one. It makes it all the stronger. I mean, that is true. That is something that the district court recognized, that the fact that the acts are similar can increase the risk that the jury will decide and will make that improper propensity inference. But we have to assume here, there's case law in this circuit and most other circuits, that the jury follows the instructions that they're given. We didn't say that in Jenkins. It was too strong. And I think, again, here, the district court looked at all of this. This court is not here to rig way. The balancing test, the court is. To some extent, we are. You know, in Judge Kessler's analogy, of course, identity, like a serial killer, is a problem for a bid. And so if you don't know who it is, you could introduce the fact that the pattern of killing was the same. But you don't have an intent problem here. No, but we have an intent problem. So under section 242, the government is required to prove intent. And intent in 242 cases tends to be the most difficult element for the government to prove. And there absolutely was a permissible purpose. The defendant admits that. The district court addressed that. The fact that the defendant had committed a prior similar act in the past and covered it up is evidence that he knew that that type of conduct was wrong. And so it makes it less likely that he was acting with an innocent purpose during the charged conduct. So the evidence is absolutely probative. Is that your theory of the case, just that he was a bystander while Hickman did all the bad stuff at Hill? His theory of the case was that he did not engage in the wrongful conduct. That's correct. So whether or not, it's not necessarily clear whether he wasn't even present or whether he just simply didn't do what Hickman said he did. But it was basically that Hickman was lying, that Gary Hill was intoxicated, and he couldn't remember the events. And so his memory was not good and couldn't be trusted. And so the government's concern in proving the intent element here was that we had two witnesses who gave somewhat conflicting testimony about the events that occurred. So their accounts didn't match up entirely. The defendant was vigorously challenging both witnesses' credibility. And so the jury easily could have discounted Hickman's testimony because of his deal with the government or discounted Hill's testimony because he was intoxicated on the night of the event. And so the government was concerned that the jury would not believe those two witnesses. And so introducing the other act evidence here was probative of intent, which is an element the government has to prove. It's probative of what they're attacking, isn't it? I mean, that was the whole defense, their lie. And they impeach it. And now the government says, OK, well, we want to bring in the other act evidence. You're bringing it in to show it happened, not to show if he stopped him. If you find he stopped him, he had this intent. It's like we're taking water over here with Hickman. He's being impeached. We better bolster him up about it. He's not testifying about intent. He's testifying about stopping and everything else, maybe both, but. Hickman did testify to both. And the jury, again, could have believed Hickman as to the fact that the events occurred or that some version of the events occurred. But Hickman did testify about what his intent was in committing the acts. And he testified about his interactions with the defendant after the events and how those interactions might lead someone to believe that the defendant acted with the requisite specific intent here. And so Hickman, the fact that the defendant challenged Hickman's credibility does go to whether or not there was enough evidence for the government to prove intent without the other evidence he used. And again, I would point back to the fact that the defendant had an opportunity to change the jury instructions, the limiting instructions, if he believed that they were not adequate to prevent the jury from making the improper propensity inference. The district court weighed all of these factors and considered the availability of other evidence. The availability of other evidence here, again, under the defendant's theory of the case was that Hickman and Hill could not be believed. And so the government, in its interest, has a burden of proof on specific intent. It's a very difficult element to prove in every one of these 242 cases. Not in this case, if you prove the conduct. Isn't that fair? Let's see if we can have this common ground. If you prove that Asher is stomping on this guy and dressing up like a doctor to deceive him about the need for medical care, if you prove those two things, it's actually pretty easy to prove he did so with an intent to deprive him of his federal constitutional rights. Isn't that fair? It's true that the sort of dressing up as a doctor and that happens does speak to intent. Well, the stomping itself doesn't speak to intent. And we know that because in 242, we have instances where jailers act in self-defense, for example. So the actus reus doesn't prove it. The doctor thing. Sure, the doctor thing. However, the only person that testified about the doctor incident was Hickman. And in fact, Hill in his testimony said that he didn't believe that the defendant was the person who had dressed up as the doctor. So we had conflicting testimony from the government's witnesses about whether the defendant engaged in that conduct. And the jury could have discounted that testimony from Hickman. So in terms of the availability of the evidence, there was some evidence of intent. And the government's not disputing that. The point is that the other act evidence has to, the risk of unfair prejudice has to substantially outweigh. And it just doesn't do that here. Where it was prohibitive, and the district were considerable. OK, well, thank you for your arguments. Thanks for being a good sport about this. But I just, you know, I want to be straight with you. And I appreciate that you were straight with us. Thank you. Mr. Tableman, you'll have the ball. Thank you, Your Honor. You'll see, if you look at page 18, items 13, 16, 13, 20, 13, 22, 13, 44, the government's closing argument, that they line these two, complete these two cases together and say, because we did it before, we did it this time. So the court can look at that. Your Honor, one thing that I thought about in this particular case, as I was preparing, was that our case law, 404B, says, well, specific intent, that's on the grounds. But our instructions, we don't like to give jurors instructions about general intent and specific intent. They want to define it differently. And I'm wondering, the court might consider whether the terminology that's used is not useful. And I say that because in a so-called general intent case, a defendant can. It's hard to bring in similar acts because there's no justification to show specific intent. And this whole area is very troublesome because I think any case where there's a prior act, there's going to be a blurring between propensity and proof of intent. And I respectfully disagree about the idea that specific intent was needed here, in reference to the other instances, to prove the act was raised, or the state of mind, because this was not some kind of self-defense case with Mr. Hill. There's nothing about that incident that reeked of self-defense. Interestingly, if they tried the Turner case, the Turner case, there was an argument of defense about self-defense because the man, although he's 125 pounds, was threatening to do harm to the officers and wanted them to buckle him so he could attack them. And arguably, maybe he would bring in the Hill elements to prove that, well, when they hit him, it wasn't self-defense. But that's not the Hill case. There's no way you can look at what happened in the Hill case as any type of self-defense. It's uniformly agreed that Hickman opened the door, went in there, and punched the guy in the jaw so hard he thought he broke his jaw. And then things went on from there. There's no claim of any threat by Mr. Hill toward anybody. It was just not an issue in this case. So unless the court has any questions. He's still the one who got punched in the jaw that hard, I think, sometimes. I believe that. Yes, Your Honor. OK. So unless the court has any questions. Thank you. Thank you. The case will be submitted.